# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**U.S. COMMODITY FUTURES**
**TRADING COMMISSION,**

              **Plaintiff,**

**v.**                                           **Case No:   6:14-cv-1766-Orl-40GJK**

**EMINI EXPERTS, LLC, CAPITAL**
**TRADING CONCEPTS LLC, DANTE S.**
**GIOVANNETTI and CAPITAL**
**FUTURES LLC,**

              **Defendants.**

_____

# REPORT AND RECOMMENDATION

      This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF U.S. COMMODITY FUTURES TRADING COMMISSION MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS (Doc. No. 81)** |
| **FILED:** | **September 18, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    BACKGROUND.

      Beginning in July of 2013, Emini Experts, LLC ("Emini"), Capital Trading Concepts LLC

("Capital Trading"), and their owner, Dante S. Giovannetti (the "Owner") (collectively, the

"Defendants") knowingly perpetuated a securities fraud scheme that defrauded at least four

investors (collectively, the "Known Investors") out of approximately $663,975.61, monies which

were intended for investing in S&P 500 futures contracts.   *See* Doc. Nos. 1 at ¶¶ 8-68; 82 at ¶¶ 5-40.   Instead of investing the funds, the Defendants transferred some of the funds to accounts held in the name of Capital Futures, LLC (the "Relief Defendant"), which is controlled by the Owner, and the Defendants used a majority of the funds to pay for their "personal expenses."   Doc. Nos. 1 at ¶¶ 42-45, 58-59; 82 at ¶¶ 35-37.   As a result of this scheme, on July 9, 2015, the Owner was sentenced to 63 months in federal prison on wire fraud charges, 18 U.S.C. § 1343, and ordered to pay criminal restitution to the investors totaling $663,975.61.   *See United States v. Giovannetti*, No. 6:15-cr-29-40DAB, Doc. No. 41 at 1-5 (M.D. Fla. July 9, 2015).   On October 30, 2014, pursuant to an *ex parte* order of this Court freezing their assets, the Defendants and the Relief Defendant had bank account balances totaling $592.13.   Doc. Nos. 9 at ¶ 5, 14-17; 82 at ¶ 40.

The instant action is a civil securities fraud action, pursuant to the Commodity Exchange Act, 7 U.S.C. §§ 1 et. seq. (2012) (the "Act"), brought by the United States' Commodity Futures Trading Commission (the "Commission") against the Defendants and the Relief Defendant.   Doc. No. 1.   On October 30, 2014, the Commission filed a Complaint for Injunctive Relief, Civil Monetary Penalties and Other Equitable Relief (the "Complaint") against the Defendants and the Relief Defendant.   Doc. No. 1.   The Complaint raises the following seven causes of action:

1. Count I – Futures Trading Fraud against the Defendants for multiple violations of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C);

2. Count II – Fraud in Connection with Swaps or Commodity Futures against the Defendants for multiple violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(c)(1) and 17 C.F.R. § 180.1(a)(1)-(3);

3. Count III – Commodity Pool Operator and Commodity Trading Advisor Fraud against the Defendants for multiple violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1);

4. Count IV – Failure to Register as Commodity Pool Operator against the Defendants in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1);

5.  Count V – Commingling of Funds by a Commodity Pool Operator against the Defendants in violation of 17 C.F.R. § 4.20(c);

6.  Count VI – Illegal Receipt of Funds by a Commodity Trading Advisor against Emini and the Owner in violation of 17 C.F.R. § 4.30(a); and

7.  Count VII – False Statements to the National Futures Association by the Owner and Emini in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4).

Doc. No. 1 at ¶¶ 69-119.   In the Complaint, the Commission requests: (1) a permanent injunction against the Defendants and any person or entity associated with Defendants; (2) a disgorgement order against the Defendants and the Relief Defendant; (3) an order rescinding all contracts and agreements, whether express or implied, between the Defendants and any of the victims of Defendants' scheme; (4) a restitution order; (5) imposition of civil monetary penalties not more than triple the monetary gain to each defendant or $140,000.00 per violation; (6) an order requiring Defendants pay costs and fees under 28 U.S.C. §§ 1920 and 2412(a)(2)(2012); and (7) any other appropriate relief.   Doc. No. 1 at 22-24.

Although the Defendants and the Relief Defendant appeared in this matter, initially with counsel, they never filed a response to the Complaint and, pursuant to Rule 55(a), Federal Rules of Civil Procedure, default has been entered against the Defendants and the Relief Defendants. *See* Doc. Nos. 74-75, 77-78.   On September 18, 2015, the Commission filed a Motion for Default Judgment Against All Defendants (the "Motion"), which is presently before the undersigned for a report and recommendation.   Doc. No. 81.   In support of the Motion, the Commission attaches a detailed affidavit of Christopher Giglio (the "Affidavit"), a Futures Trading Investigator in the Commission's Division of Enforcement.   Doc. No. 82 at 1-11.

The factual allegations set forth in the Complaint, the Motion, and Affidavit are detailed and do not need to be fully recited here.  *See* Doc. No. 1 at ¶¶ 1-68; 81 at 6-11; 82 at ¶¶ 5-42.[1]

In summary, the Commission alleges the following:

Emini has been registered with the Commission as a Commodity Trading Advisor ("CTA") since November 2, 2012, but Emini has never been registered as a Commodity Pool Operator ("CPO").  Doc. Nos. 1 at ¶ 9; 82 at ¶ 5.[2]  The Owner is the only principal and the Associated Person of Emini (the "AP").  Doc. Nos. 1 at ¶¶ 10, 17-18; 82 at ¶¶ 5-6; *see also* 17 C.F.R. §

---

[1] As noted in the Affidavit, as part of his criminal plea agreement the Owner admitted to knowingly devising a scheme with the intent to defraud others of money and property by false representations about material facts, and that he transmitted wire communications in interstate commerce to aid in the scheme.  *See* Doc. No. 82 at ¶ 42; *see also United States v. Giovannetti*, No. 6:15-cr-29-Orl-40DAB, Doc. No. 23 at 2 (M.D. Fla. Apr. 1, 2015).

[2] A CTA is defined as:

> This term means any person who, for compensation or profit, engages in the business of advising others, either directly or through publications, writings or electronic media, as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery, security futures product, or swap; any agreement, contract or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i) of the Act; any commodity option authorized under section 4c of the Act; any leverage transaction authorized under section 19 of the Act; any person registered with the Commission as a commodity trading advisor; or any person, who, for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning any of the foregoing.

17 C.F.R. § 1.3(bb)(1).  Thus, a CTA is primarily an advisor.  A CPO is defined as:

> This term means any person engaged in a business which is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any commodity for future delivery, security futures product, or swap; any agreement, contract or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i) of the Act; any commodity option authorized under section 4c of the Act; any leverage transaction authorized under section 19 of the Act; or any person who is registered with the Commission as a commodity pool operator, but does not include such persons not within the intent of this definition as the Commission may specify by rule or regulation or by order.

17 C.F.R. § 1.3(cc).  A CPO primarily engages in the business of soliciting or receiving funds for the purpose trading commodity futures.

1.3(aa)(4) (defining an associated person for a CTA).   Thus, neither Emini nor the Owner have ever been registered with the Commission to engage in the business of a CPO.   Capital Trading was established on August 7, 2013, it has never been registered with the Commission in any capacity, and the Owner held himself out to investors as Capital Trading's controlling member. Doc. Nos. 1 at ¶ 11; 82 at ¶ 7.   The Relief Defendant was established on December 12, 2013, it has the same address as Capital Trading and Emini, and it has never registered with the Commission in any capacity.   Doc. Nos. 1 at ¶ 11; 82 at ¶ 8.

The Commission alleges that beginning in July of 2013, the Defendants began soliciting funds from the Known Investors for the stated purpose of pooling investor funds in the trading of S&P 500 futures contracts on Emini's account.   Doc. Nos. 1 at ¶¶ 21-41; 82 at ¶¶ 11-38.[3]   The Owner, on behalf of the Defendants, utilized falsified trading account statements that reflected significant profits to lure the Known Investors into joining a fictitious investment pool.   Doc. Nos. 1 at ¶¶ 22-25; 82 at ¶¶ 11-12, 23-27.   The Defendants never had a trading account, but utilized the trading account from one of Emini's clients to create the fictitious account documents, showing fake trading profits in Emini's name.   Doc. No. 82 at ¶¶ 23-28.   The actual client's account realized trading losses during the same period.   Doc. No. 82 at ¶ 26.

On or about July 25, 2013, based upon the Owner's solicitation and the falsified trading account statements, Investor 1 wrote a check to Emini in the amount of $100,000.00 for investment in the pool.   Doc. Nos. 1 at ¶¶ 25-26; 82 at ¶ 11.   On October 4, 2013, after receiving false periodic statements reflecting more than 100% in profits each month, Investor 1, at the Owner's direction, wired another $100,000.00 to a JPMorgan Chase bank account held in Emini's name. Doc. No. 1 at ¶¶ 27-28; 82 at ¶ 12.   On January 21, 2014, based upon falsified periodic trading

---

[3] The Known Investors will be referred to individually as "Investor 1", "Investor 2", "Investor 3", and "Investor 4".

statements showing consistent profits, Investor 1 wired an additional $100,000.00 to Emini's JPMorgan Chase bank account.   Doc. Nos. 1 at ¶ 28; 82 at ¶ 13.   On October 14, 2014, the Owner knowingly made a material false statement to the National Futures Association (the "NFA"), during an unannounced examination of Emini, when the Owner stated that Emini's JPMorgan Chase bank account was closed in 2011.   Doc. Nos. 1 at ¶ 64; 82 at ¶ 39.

On February 13, 2014, Investor 1 sent Emini a check for $150,000.00, of which $50,000.00 was on behalf of Investor 2.   Doc. No. 82 at ¶ 14.   Investor 1, at the Owner's urging, introduced Investor 3 and Investor 4 to the Owner.   Doc. Nos. 1 at ¶ 32; 82 at ¶ 16.   On February 25, 2014, Investor 3 transferred $100,025.00 into a bank account held in the name of the Relief Defendant. Doc. No. 82 at ¶ 18.   In February and April of 2014, Investor 4 sent checks and wire transfers totaling $148,950.61 to accounts held in the name of Capital Trading.   Doc. Nos. 1 at ¶¶ 37-40; 82 at ¶ 20.   At the request of the Owner, all of the Known Investors executed agreements between themselves and Capital Trading, making the Known Investors a "silent partner" in Capital Trading's "day trading" activities.   Doc. Nos. 1 at ¶¶ 30-31, 35; 82 at ¶ 21.

The Defendants have never been registered with the Commission as CPO and, therefore, they have never been authorized to solicit funds for pooling in a commodity trading business. Doc. No. 82 at ¶¶ 6-7.   The Defendants never deposited any of the investor's funds into a trading account.   Doc. No. 82 at ¶ 35.   All of the periodic account statements the Owner provided to the Known Investors were wholly false.   Doc. No. 82 at ¶¶ 23-34.   Ultimately, the Defendants returned a total of $35,000.00 to Investor 4.   Doc. No. 82 at ¶ 38.   The chart below represents the net investments of each Known Investor:

|  | Gross Amount | Net Amount | Pro Rata % |
|---|---|---|---|
| Investor 1 (R.F.) | $400,000.00 | $400,000.00 | 60.2% |
| Investor 2 (M.C.) | $50,000.00 | $50,000.00 | 7.5% |
| Investor 3 (T.H.) | $100,025.00 | $100,025.00 | 15.1% |
| Investor 4 (B.F.) | $148,950.61 | $113,950.61 | 17.2% |
| Total | $698,975.61 | $663,975.61 | 100.00% |

Doc. No. 82 at ¶ 83.   In the Motion, the Commission requests permanent injunctive relief, a civil monetary penalty, and restitution against the Defendants, disgorgement against the Relief Defendant, and costs against the Owner.   Doc. No. 81 at 18-24.   With respect to the civil monetary penalty, pursuant to Section 6c(d) of the Act, 7 U.S.C. § 13a-1(d)(1)(A), the Commission requests at total civil monetary penalty of $2,131,926.83, representing triple the Defendants' monetary gain ($663,975.61 x 3) plus an additional $140,000.00 for the Owner's intentional misrepresentations to the NFA, which have an independent factual basis.   Doc. No. 81 at 22-24. In addition to its memorandum of legal authority in support of the relief requested, the Commission has provided a proposed order.   Doc. Nos. 81 at 18-24; 81-1 at 1-24.

## II.   STANDARD.

When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.   Fed. R. Civ. P. 55(a).   However, the mere entry of default by the Clerk does not in itself warrant the entry of default judgment by the

Court.   *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4]

Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be

entered.   *Id.   See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)

("[A] default judgment cannot stand on a complaint that fails to state a claim.").   A default

judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars

the defendant from contesting those facts on appeal.   *Buchanan v. Bowman*, 820 F.2d 359, 361

(11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206).   Although it must accept well-pled facts

as true, the Court is not required to accept a plaintiff's legal conclusions.   *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).

Notwithstanding the propriety of default judgment against a defendant, it remains

incumbent on the plaintiff to prove the amount of damages to which he or she is entitled.   "While

well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the

amount of damages are not admitted by virtue of default; rather, the court must determine both the

amount and character of damages."   *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593

n.5 (S.D. Ala. 2007); *Whole Space Indus., Ltd. v. Gulfcoast Int'l Prods., Inc.*, Case No. 2:09-cv-

217-UA-SPC, 2009 WL 2151309, at *3 (M.D. Fla. July 13, 2009) (same).   Therefore, even in the

default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for

any damage award it enters[.]"   *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir.

2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544

(11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record

---

[4] In *Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)* (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

adequately reflects a basis for an award of damages); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were speculative and not proven by a fair preponderance of the evidence).

## III.   <u>ANALYSIS.</u>

In short, the effect of the entry of default is that all of the well-pled factual allegations in the Complaint are taken as true and they, along with the Affidavit (Doc. No. 82), establish the Defendants' liability as to all seven counts in the Complaint.   Doc. No. 1 at 12-22.

### A. Counts I and II – Futures Trading Fraud and Fraud In Connection With Commodity Futures.

The elements for futures trading fraud under Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (Count I) and fraud in the connection with commodity futures, Section 6(c)(1) of the Act, 7 U.S.C. § 9(c)(1) and 17 C.F.R. § 180.1(a) (Count II) are the same.   *See U.S. Commodity Futures Trading Com'n v. Smithers*, 2013 WL 4851684, at *8 (S.D. Fla. July 31, 2013).   The elements are: (1) material misrepresentations, misleading statements or omissions; (2) in connection with the purchase or sale of a commodity; (3) made with scienter.   *Id.   See also U.S. Commodity Futures Trading Com'n v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1314, 1346-47 (S.D. Fla. May 16, 2014).   The Defendants committed futures trading fraud, as well as fraud in the connection with commodity futures, by: knowingly engaging in a scheme to solicit investor funds to trade S&P 500 futures; issuing false trading account statements to investors to solicit new funds and new investors; and willfully, knowingly, and blatantly misappropriating the Known Investor's funds of their own use.   Accordingly, the Commission is entitled to default judgment as to Counts I and II.

**B.  Count III – CTA and CPO Fraud.**

Section 4o(1)(a) of the Act, 7 U.S.C. § 6o(1)(B), makes it unlawful for a CTA, CPO, or an associated person thereof to employ a scheme to defraud a client.   *Id.*   The elements of Section 4o(1) are the same as Section 4b of the Act (*see supra* p. 9).   *See Stotler & Co. v. U.S. Commodity Futures Trading Com'n.*, 855 F.2d 1288, 1290-91 (7th Cir. 1988) (Section 4b and Section 4o have same elements); *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 678 (11th Cir. 1988).   7 U.S.C. § 6o(1)(B) makes it unlawful for a CTA, CPO or an associated person from engaging "in any transaction, practice, or course of business which operates as a fraud or deceit upon a client or participant or prospective client."   *Id.*   With respect to 7 U.S.C. § 6o(1)(B), the Eleventh Circuit has held that it does not require proof of scienter.   *Messer*, 847 F.2d at 679.   As set forth above, the Commission has demonstrated that Defendants committed violations of Section 4b of the Act (*see supra* p. 9).   The Owner was registered as the associated person of Emini, and the Defendants held themselves out as being engaged in the CPO business.   Thus, the Commission has established that the Defendants committed CTA and CPO fraud under Section 4o(1), 7 U.S.C. §§ 6o(1)(A)-(B).   Accordingly, the Commission is entitled to default judgment as to Count III.

**C.  Count IV- Failure to Register as a CPO.**

The Defendants never registered with the Commission as a CPO and, therefore, they were not authorized to solicit funds for the purpose of pooling and investing in commodity futures. Section 4m(1) of the Act, 7 U.S.C. § 6m(1) makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its CPO business.   *Id.*   Here, the Commission has established that the Defendants held themselves out to the Known Investors as a CPO without registering the Commission, and they had monies wired through interstate commerce for the purpose of their

fraudulent CPO business.   Accordingly, the Commission is entitled to default judgment as to Count IV.

### D.  Count V – Commingling Funds by a Commodity Pool Operator.

17 C.F.R. § 4.20(c) provides that "no [CPO] may commingle the property of any pool that it operates or that it intends to operate with the property of any other person."   *Id*.   The Commission has established that the Defendants held themselves out as a CPO, and directed the $663,975.61 of Known Investor funds to accounts held in the names of the either the Defendants or the Relief Defendant, which caused commingling of the purported pool fund with the Defendants' property.   Accordingly, the Commission is entitled to default judgment as to Count V.

### E.  Count VI – Illegal Receipt of Funds by a Commodity Trading Advisor.

17 C.F.R. § 4.30(a) provides that no CTA "may solicit, accept or receive from an existing or prospective client funds, securities, or other property in the trading advisor's name . . . to purchase, margin, guarantee, or secure any commodity interest of the client."   *Id*.   Emini and the Owner, as Emini's associated person, were registered as a CTA with the Commission.   They solicited and received funds from existing and prospective clients in Emini's name for investing in S&P futures contracts.   Thus, Emini and the Owner violated 17 C.F.R. § 4.30(a).   *See U.S. Commodity Futures Trading Com'n v. Smithers*, 2006 WL 6355688, at *7 (S.D. Fla. Nov. 6, 2006). Accordingly, the Commission is entitled to default judgment as to Count VI with respect to Emini and the Owner.

### F.  Count VII – False Statements to NFA.

Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) makes it unlawful for any person to make knowingly false statements or representations of material fact to a registered entity, board of trade,

or futures association designated or registered under the Act, which is acting in its official capacity at the time the misrepresentations are made.   *Id*.   From October 2013 through January 2014, the Owner directed Investor 1 to wire funds to a JPMorgan bank account in Emini's name.   On October 14, 2014, the Owner represented to the NFA, a futures association registered with the Commission, that Emini closed the JPMorgan bank account in 2011, and did not disclose the receipt of multiple deposits into that account in 2013 and 2014.   Accordingly, the Commission is entitled to default judgment as to Count VII with respect to Emini and the Owner.

### G.  Liability of Defendants.

Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2a(1)(B), and 17 C.F.R. § 1.2, the Owner's acts on behalf of Emini and Capital Trading occurred within the scope of his agency and, therefore, Emini and Capital Trading are liable for the Owner's conduct.   Similarly, as the controlling person of Emini and Capital Trading, the Owner has derivative liability for the acts of Emini and Capital Trading.   *See* 7 U.S.C. § 13c(b); *Monieson v. U.S. Commodity Futures Trading Commission*, 996 F.2d 852, 859-60 (7th Cir. 1993).

### H.  Remedies.

As set forth above, the Commission seeks permanent injunctive relief, restitution, and a civil monetary penalty against the Defendants, as well as disgorgement against the Relief Defendant.   Doc. No. 81 at 18-24.   The Commission has attached a detailed proposed order outlining the relief sought.   Doc. No. 81-1 at 16-23.   The undersigned will address the Commission's entitlement to each category of relief requested.

### i.     Permanent Injunctive Relief.

Pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a – 1(a), the Court has the authority to enter the permanent injunctive relief sought by the Commission.   *See* Doc. No. 81-1 at 16-18.   In

*Securities Exchange Com'n v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982)*,* the Eleventh Circuit set forth the following factors the Court must consider when determining whether to enter permanent injunctive relief:

> "Such factors include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations."

*Id*. (quoting *Securities and Exchange Commission v. Blatt*, 583 F.2d 1325, 1334 n. 29 (5th Cir. 1978). In this case, the Defendants' conduct is especially egregious, recurrent, and required a high level of scienter. While the Owner is currently serving 63 months in federal prison, without the type and scope of injunctive relief requested by the Commission there is a reasonable likelihood that the Owner would engage in further commodity futures trading fraud or other similar security schemes. *Id*. By defaulting, the Defendants have made no assurances against future violations. Therefore, the undersigned finds that each of the above factors weighs heavily in favor of imposing a permanent injunction. Accordingly, it is recommended that the Court enter a permanent injunction against the Defendants consistent with the Commission's proposed order (Doc. No. 81-1 at 16-18).

### ii.   Restitution.

Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A), permits the Court to order restitution to persons who have sustained losses proximately caused by violations of the Act. In this case, the Known Investors sustained net losses of $663,975.61 (*see supra* p. 7), which were proximately cause by Defendants' violations of the Act and, therefore, they are entitled to restitution. As a result of his criminal case, the Owner has been ordered to make restitution for the same amount to the same Known Investors. *See United States v. Giovannetti*, 6:15-cv-29-Orl-

40DAB, Doc. No. 41 at 4-5.   Thus, the Court's order of restitution should expressly provide a dollar-for-dollar credit against the restitution order in this case for any restitution payments made in the criminal proceedings.   The Court should place the burden of notifying the Court of any restitution payments made in criminal proceedings on the Owner and the Commission.   Payments made in satisfaction of restitution should be made to the Clerk of the Court and disbursed to the victims in proportion to their pro-rata share of the losses.   *See supra* p. 7.   Accordingly, restitution should be ordered consistent with the Commission's proposed order (Doc. No. 81-1 at 19) with one addition – the Court should direct the Commission to provide the Court with the name and current contact information where restitution payments may be remitted to Investor 1 through Investor 4, and direct the Commission to keep the Clerk informed of the victims' current contact information.

### iii.      Civil Monetary Penalty.

Pursuant to Section 6c(d) of the Act, 7 U.S.C. § 13a-1(d)(1)(A), and 17 C.F.R. § 143.8(a)(1)(ii)(D) and (b), the Court may impose a civil monetary penalty not more than the greater of $140,000.00 per violation or triple the monetary gain to the person for each violation.   *Id.*[5]   A civil monetary penalty should be rationally related to the offenses or the need for deterrence.   *See U.S. Commodity Futures Trading Com'n v. Levy*, 541 F.3d 1102, 1112 (11th Cir. 2008) (citing authority).   The Commission requests a civil monetary penalty in the amount of $2,131,926.83, representing: (1) triple the total monetary gain ($1,991,926.83) and (2) $140,000.00 for Emini and the Owner's distinct violation of knowingly making false representations to the NFA.   Doc. No. 81 at 22-24.   In this case, the Defendants committed numerous violations of the Act and

---

[5]  17 C.F.R. § 143.8(a)(1)(ii)(D) increases the amount per violation from $100,000.00 under the statute to $140,000.00, to account for inflation, and 17 C.F.R. § 143.8(b) provides that the Commission will adjust for inflation once every four years.

perpetuated the most egregious of frauds against the Known Investors, which the Act is directly

designed to prevent or deter.   On this record, Court should impose a civil monetary penalty against

the Defendants, jointly and severally, in the amount of $1,991,926.83, and an additional civil

monetary penalty, jointly and severally, against Emini and the Owner for $140,000.00.[6]

### iv.    Disgorgement.

A relief defendant is an entity that has received ill-gotten funds or property and does not

have a right to those funds or property.   *See U.S. Commodity Futures Trading Com'n v.*

*Kimberlynn Creek Ranch, Inc*., 276 F.3d 187, 192 (4th Cir. 2002).   Courts have equitable power

to disgorge such relief defendants of the ill-gotten funds.   Pursuant to Section 6c(d)(3)(B) of the

Act, 7 U.S.C. § 13a-1(d)(3)(B), the Court may disgorge Known Investors' funds received by the

Relief Defendant.   The Relief Defendant received at least $143,358.46 in Known Investors'

funds.   *See* Doc. No. 82 at ¶ 36.   Accordingly, the Court should enter an order of disgorgement

against the Relief Defendant in the amount of $143,358.46, adopt the Commission's proposed

order (Doc. No. 81-1 at ¶¶ 85-89), direct all payments be made to the Clerk of the Court, and direct

that any payments made in satisfaction thereof be remitted to the Known Investors in proportion

to their pro-rata share of the losses.   *See supra* p. 7.

### v.    Costs.

On December 16, 2014, the Court entered an order directing the Owner to pay the

Commission $2,435.87.   Doc. No. 55 at 3.   The Commission maintains that the Owner has not

satisfied the order.   Doc. No. 81 at 24.   Accordingly, the Court should also enter a judgment

against the Owner for $2,435.87 in costs.

---

[6] To be clear the undersigned is recommending that the Court adopt the Commission's proposed order with respect to the civil monetary penalty, except that the Court finds that Capital Trading is not liable for the additional $140,000.00 civil monetary penalty related to Emini and the Owner's false representations to the NFA.

IV.     **CONCLUSION.**

Based on the foregoing it is **RECOMMENDED** that the Motion (Doc. No. 81) be **GRANTED** as follows:

1.  Judgment be entered in favor of the Commission and against the Defendants, jointly and severally, as to Counts I through V;

2.  Judgment be entered in favor of the Commission and against Emini and the Owner, jointly and severally, as to Counts VI and VII;

3.  The Judgment grant the Commission permanent injunctive relief against the Defendants consistent with the Commission's proposed order (Doc. No. 81-1 at 16-18);

4.  The Judgment impose restitution upon the Defendants, jointly and severally, as set forth in above table (*see supra* p. 7), consistent with the Commission's proposed order (Doc. No. 81-1 at 18-20);

5.  The Judgment direct the Commission to provide the Clerk of Court with the names and contact information for Investors 1 through Investor 4, and the Commission have the continuing duty to keep the Clerk informed of the victims' current contact information where restitution payments may be remitted;

6.  The Judgment impose a civil monetary penalty against the Defendants, jointly and severally, in the amount of $1,991,926.83;

7. The Judgment impose a separate civil monetary penalty against Emini and the Owner, jointly and severally, in the amount of $140,000.00;[7]

8. The Judgment award disgorgement from the Relief Defendant of ill-gotten funds in the amount of $143,358.46, consistent with the Commission's proposed order (Doc. No. 81-1 at ¶¶ 86-93);

9. The Judgment award costs in favor of the Commission and against the Owner in the amount of $2,435.87;

10. The Court retain jurisdiction to enforce the Judgment; and

11. The Court direct the Clerk to close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.  **If the Commission has no objection to this report and recommendation, it may promptly file a joint notice of no objection.**

**RECOMMENDED** in Orlando, Florida on March 29, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

_____

[7] *See supra* n.6.

Unrepresented Parties